UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-cv-00081-LLK

**DONNA HICKMAN**                                                                                                                      **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                                   **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claims for disability benefits. Plaintiff's memorandum in support of fact/law summary is at Doc. 20-1, and the Commissioner's fact/law summary in opposition is at Doc. 21. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 14].

Plaintiff makes a single argument. Because the argument is unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

**Procedural history**

In May 2015, Plaintiff filed claims for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, alleging that she became disabled in or around May 2012. [Administrative Record, Doc. 13 at 220].

In April 2018, the ALJ issued a partially favorable decision. *Id.* at 220-32. The ALJ granted Plaintiff's SSI claim, finding that she became disabled on January 19, 2018, but denied her DIB claim because she was last insured for DIB in December 2015. *Id.*

In April 2019, the Appeals Council vacated the ALJ's entire decision. *Id.* at 241-43.

In November 2019, the present ALJ denied Plaintiff's SSI and DIB claims, finding that she was not under a disability from May 2012 through the November 2019 decision date. *Id.* at 248-57.

In April 2020, the Appeals Council vacated the ALJ's decision. *Id.* at 267-69.

In August 2020, the ALJ issued a new decision, again denying Plaintiff's SSI and DIB claims, finding that Plaintiff was not under a disability from May 2012 through the August 2020 decision date. *Id.* at 16-32.

In March 2021, the Appeals Council declined to disturb the ALJ's decision, thereby rendering it the Commissioner's final decision, subject to the present judicial review. *Id.* at 1-4.

**Discussion**

In August 2015, Plaintiff was examined at the request of the Commissioner by P. Leanne Scott, MS, LPP [master of science, licensed psychological practitioner]. [Doc. 13 at 824].

In September and November 2015, in light of Ms. Scott's findings and the record as a whole, the Commissioner's non-examining program psychologists, Mary K. Thompson, Ph.D., and Alex Guerrero, M.D., opined regarding Plaintiff's mental impairments and limitations. *Id.* at 157-58, 192-93.

The ALJ found, among other things, that Plaintiff's depression results in the following mental residual functional capacity (RFC):

> … can understand, remember, and carry out simple and repetitive tasks in a work environment that is free of fast-paced production requirements, involving only simple work-related decisions with few, if any, changes in the workplace; can respond appropriately to supervisors and coworkers in usual work situations; and can deal with changes in a routine work setting.

*Id.* at 23. In support, the ALJ gave "some weight" to the opinion of Ms. Scott and "great weight" to the opinions of Drs. Thompson and Guerrero. *Id.* at 27-28.

Plaintiff argues that "[t]he [ALJ's] mental RFC determination is unsupported by substantial evidence [because the ALJ's August 2020 decision] … relied on the stale [5-years old] opinion evidence" from September and November 2015, from Drs. Thompson and Guerrero. [Doc. 10-1 at PageID.1802].

The argument is unpersuasive for four reasons.

First, arguably, the Sixth Circuit does not recognize the type of freestanding "staleness" claim that Plaintiff is asserting. In all cases, the ultimate "burden lies with the claimant to prove that she is disabled." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Therefore, in general, if the evidence is stale, a claimant should submit new evidence proving her disability claim.

"Staleness" enters the pictures (for judicial review purposes) via the rules for weighing medical opinions,[1] which provide, among other things, that "[g]enerally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527(c)(1). In *Huston v. Comm'r*, for example, which Plaintiff cites in support of her argument [Doc. 20-1 at PageID.1804 citing No. 5:20-CV-119-CHB, 2021 WL 2651804 (E.D. Ky. June 28, 2021)], the Commissioner's non-examining program psychologist opined that Huston had certain limitations in 2016. In 2018, Huston's treating psychiatrist opined that Huston had additional limitations. The ALJ gave greater weight to the opinion of the non-examining source, and the question before the Court was whether, notwithstanding the alleged "staleness" of the non-examining source opinion, the ALJ identified sufficient reasons to overcome the general preference for treating source opinions.

Here, in contrast, Plaintiff points to no treating or examining source opinion that supports her disability claim. Rather, she seeks to rely on a freestanding "staleness" claim, which effectively would put the burden on the Commissioner to prove she is not disabled.

Second, assuming for the sake of argument that Plaintiff's freestanding "staleness" argument is cognizable herein, "[t]here will always be a gap between the time the agency experts review the record

---

[1] The rules for weighing medical opinions apply in this case because Plaintiff filed her claim in May 2015. [Doc. 13 at 220]. *See* 20 C.F.R. § 404.1520c ("For claims filed … on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 404.1527 apply.").

3

... and the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Kelly v. Comm'r*, 314 F. App'x 827, 831 (6th Cir. 2009).

In terms of new evidence that might have rendered untenable the opinions of Drs. Thompson and Guerrero, the ALJ considered Plaintiff's "medical visits from June 2019 through March 2020 [with] … physical and mental status exams." [Doc. 13 at 26]. But the ALJ found that the records of these visits reflect "conservative" treatment and show "consistently normal results overall and without any indications of significant functional loss or the need for emergency or inpatient care." *Id.* referencing 1671-1709. The ALJ further found that, "[d]espite [Plaintiff's] subjective complaints, her mental status has remained stable overall and she has experienced significant improvement when taking medications as instructed." *Id.* at 28.

Plaintiff identifies no new evidence that rendered untenable the opinions of Drs. Thompson and Guerrero.

Third, "before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record." *Kepke v. Comm'r*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley v. Comm'r*, 581 F.3d 399, 409 (6th Cir. 2009)). "In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny" by considering the later-submitted medical records. *Id.*

While Plaintiff is dissatisfied with the ALJ's conclusions drawn therefrom, it is undisputed that the ALJ "at least considered" Plaintiff's medical records that came into existence after Drs. Thompson and Guerrero had given their opinions, thus subjecting those opinions to some level of "scrutiny."

Fourth, Plaintiff argues that the ALJ's characterization of her medical records as showing "consistently normal results overall" was "highly selective" and amounted to "cherry-pick[ing]" of the

4

evidence by the ALJ. [Doc. 20-1 at PageID.1804]. According to Plaintiff, her tearfulness and PHQ-9[2] test scores during mental status examination showed "considerably more than 'normal results'":

> [O]n October 1, 2018, mental status examination was abnormal as Plaintiff was tearful at the beginning of exam and laughing at the end. T 1545. On October 22, 2018, mental status examination was abnormal as Plaintiff was emotional/tearful during exam. T 1549. Plaintiff was referred to psychiatry as she was having severe anxiety issues that were causing her physical symptoms. T 1549. On May 23, 2019, mental status examination was abnormal as Plaintiff used random words in exam room and she became easily tearful. T 1553. On June 14, 2019, mental status examination was abnormal as Plaintiff used anxious words in exam room. T 1681. On August 21, 2019, mental status examination was abnormal as Plaintiff used anxious words in exam room, had random thoughts, going from one subject to another without any avail. T 1687. Plaintiff returned to Helping Hands on November 22, 2019, and mental status examination was abnormal. T 1692. On January 21, 2020, mental status examination was noted to be abnormal. T 1696.
>
> … In this case, there was evidence that shows Plaintiff's mental condition was deteriorating. For example, on October 22, 2018, Plaintiff was referred to psychiatry as she was having severe anxiety issues that were causing her physical symptoms. T 1549. Plaintiff returned to Helping Hands on June 28, 2019, where she had a PHQ-9 score of 11, indicating moderate depression. T 1684. Plaintiff returned to Helping Hands on November 22, 2019, at which time she had a PHQ-9 score of 22. T 1692. By January 21, 2020, Plaintiff had a PHQ-9 score of 24. T 1696. This evidence supports a finding that Plaintiff's mental health was in a state of decline since the mental opinions were rendered.

[Doc. 10-1 at PageID.1804-06].

Allegations that the ALJ cherry-picked the evidence are "seldom successful because crediting it would require a court to re-weigh record evidence," which is prohibited on judicial review. *DeLong v. Comm'r*, 748 F.3d 723, 726 (6th Cir. 2014) citing *White v. Comm'r*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

While Plaintiff's tearfulness and PHQ-9 test scores may not have been "normal," they rendered neither the opinions of Drs. Thompson and Guerrero nor the ALJ's mental RFC determination untenable.

---

[2] The PHQ-9 is the depression module of the Patient Health Questionnaire (PHQ), which is a self-administered diagnostic instrument for common mental disorders," which "scores each of the 9 DSM–IV [Diagnostic and Statistical Manual] criteria as 0 (not at all) to 3 (nearly every day). *Seals v. Comm'r*, No. 1:18 CV 1345, 2019 WL 4141499, n.2 (N.D. Ohio Aug. 30, 2019).

Therefore, there is no reason to depart from the general rule of eschewing arguments on judicial review based on allegations of cherry-picking.

## ORDER

Because Plaintiff's argument is unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court hereby AFFIRMS the Commissioner's final decision and DISMISSES Plaintiff's complaint.

May 3, 2022

Lanny King, Magistrate Judge
United States District Court